UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

REGINALD POWE and COLLEEN JONES,

               Plaintiff,

     v.

CAMBIUM LEARNING, INC.,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

08-CV-1963 (JGK)

ECF Case

## DECLARATION OF MEGAN A. BURNS IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

I, Megan A. Burns, pursuant to 28 U.S.C. § 1746, declare as follows:

1.     I am an associate at the law firm Gibson, Dunn & Crutcher LLP, counsel for Cambium Learning, Inc. ("Cambium"), the defendant in this action. I submit this declaration in support of Cambium's Motion to Dismiss the Complaint.

2.     Attached hereto as Exhibit A is a true and correct copy of Plaintiffs' Complaint, filed in New York State court on or about January 11, 2008.

3.     Attached hereto as Exhibit B is a true and correct copy of Reginald Powe's Employment Agreement with Cambium, executed on or about October 28, 2003.

4.     Attached hereto as Exhibit C is a true and correct copy of Colleen Jones's Employment Agreement with Cambium, executed on or about October 28, 2003.

5.     Attached hereto as Exhibit D is a true and correct copy of Cambium Learning, Inc.'s 2004 Stock Compensation Plan, dated April 28, 2004 and amended on April 12, 2006.

6.    Attached hereto as Exhibit E is a true and correct copy of the Separation

Agreement and General Release between Cambium and Reginald Powe, executed February 28,

2006.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this

26th day of March, 2008.


_Megan Burns_

Megan A. Burns

# EXHIBIT A

Index No.                                    Year 20

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

REGINALD POWE and COLLEEN JONES,

Plaintiffs,

-against-

CAMBIUM LEARNING COMPANY a/k/a CAMBIUM LEARNING, INC.,

Defendant.

**SUMMONS & VERIFIED COMPLAINT**

**RICHARD A. KRASLOW, P.C.**     *Of Counsel to Alan G. Kraut, Esq.*
                    *Attorney for*   Plaintiffs
**425 BROAD HOLLOW ROAD, SUITE 206**
**MELVILLE, NEW YORK 11747**
**(631) 756-8300**

To:

*Attorney(s) for*

Service of a copy of the within                                    is hereby admitted

Dated:

                                    Attorney(s) for

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the Courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.

*PLEASE TAKE NOTICE*

☐ **Notice of Entry**     that the within is a (certified) copy of a
                    entered in the office of the clerk of the within named Court on              20

☐ **Notice of Settlement**     that an Order of which the within is a true copy will be presented for settlement to the Hon.          at
                    one of the judges of the within named Court, on              20
                    , at          M.

Dated:

                                    **RICHARD A. KRASLOW, P.C.**
To:                               *Attorney for*

75-1940/powe-summons

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Index No.: 08- 100443
Date Filed: 1/11/08

-------------------------------------------------------------------X

REGINALD POWE and COLLEEN JONES,

                                Plaintiffs,

                  -against-

CAMBIUM LEARNING COMPANY a/k/a CAMBIUM
LEARNING, INC.,

                            Defendant.

-------------------------------------------------------------------X

Plaintiffs designate
NEW YORK COUNTY
as the place of Trial

The basis of the venue is
Plaintiff's residence

**SUMMONS**

Plaintiff resides at
16 E. 98th Street
New York, NY 10029
COUNTY OF NEW YORK

To the above named Defendant:

          **YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve a copy of your Answer, or, if the Complaint is not served with this Summons, to serve a Notice of Appearance, on the Plaintiffs' attorneys within twenty (20) days after the service of this Summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this Summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: Melville, New York
      January 8, 2008

                      Yours, etc.

                      RICHARD A. KRASLOW, P.C.

                      By:  Richard A. Kraslow, Esq.
                      *Of Counsel to Alan G. Kraut, Esq.*
                      Attorneys for Plaintiffs
                      425 Broad Hollow Road, Suite 206
                      Melville, New York  11747
                      (631) 756-8300

**Defendant's Addresses:**
CAMBIUM LEARNING COMPANY a/k/a CAMBIUM LEARNING, INC.
313 Speen Street
Natick, Massachusetts  01760

75-1940/powe-complaint

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------X
REGINALD POWE and COLLEEN JONES,                     Index No.:
                                                     Date Filed:
                        Plaintiffs,

        -against-                                    **VERIFIED COMPLAINT**

CAMBIUM LEARNING COMPANY a/k/a CAMBIUM
LEARNING, INC.,
                        Defendant.
--------------------------------------------------------------------X

        Plaintiffs, REGINALD POWE and COLLEEN JONES, complaining of the

Defendant, CAMBIUM LEARNING COMPANY a/k/a CAMBIUM LEARNING, INC.,

through their attorneys, ALAN G. KRAUT, ESQ., set forth and allege, upon information and

belief, as follows:

        1.      This is an action for damages and is within the jurisdiction of this

Court.

        2.      That at all times material hereto, Plaintiff, REGINALD POWE, was

and still is a resident of the County of New York, State of New York, is over the age of 18

years and *sui juris*.

        3.      That at all times material hereto, Plaintiff, COLLEEN JONES, was and

still is a resident of the County of New York, State of New York, is over the age of 18 years

and *sui juris*.

        4.      That Defendant, CAMBIUM LEARNING COMPANY a/k/a

CAMBIUM LEARNING, INC. (hereinafter "CAMBIUM LEARNING COMPANY"), is a

foreign corporation with principal offices at 313 Speen Street, Natick, Massachusetts 01760,

and was at all times material hereto doing business in the State of New York.

5.    That venue is proper in New York County, New York as the causes of action sued upon herein accrued in New York County, New York.

6.    That Plaintiffs, REGINALD POWE and COLLEEN JONES, have retained the law firm of Alan G. Kraut, Esq. to represent them in this action and have obligated themselves to pay a reasonable fee for the services of counsel, for which Defendant, CAMBIUM LEARNING COMPANY, is responsible.

7.    Plaintiffs, REGINALD POWE and COLLEEN JONES, have performed all conditions precedent to the commencement of this action, if any.

### GENERAL ALLEGATIONS

8.    That at all times material hereto, Metropolitan Teaching and Learning Company was a New York Corporation, operating and existing under the laws of the State of New York, with its principal place of business at 33 Irving Place, New York, New York 10003.

9.    That at all times material hereto, Plaintiffs, REGINALD POWE and COLLEEN JONES, were principals and controlling shareholders of Metropolitan Teaching and Learning Company.

10.    That at all times material hereto, George A. Logue was Executive Vice President of Defendant, CAMBIUM LEARNING COMPANY, and was acting for and on behalf of Defendant, CAMBIUM LEARNING COMPANY, in the scope of his employment with CAMBIUM LEARNING COMPANY.

11.    That at all times material hereto, Nader Darehshori was Chairman and

Chief Executive Officer of Defendant, CAMBIUM LEARNING COMPANY, and was acting for and on behalf of the Defendant, CAMBIUM LEARNING COMPANY, in the scope of his employment with CAMBIUM LEARNING COMPANY.

## AS AND FOR A FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

12.    Plaintiffs, REGINALD POWE and COLLEEN JONES, repeat and reallege each and every allegation contained in paragraphs "1" through "11" as if same were more fully set forth herein.

13.    That on or about October 28, 2003, Plaintiff, COLLEEN JONES, entered into an employment agreement with Defendant, CAMBIUM LEARNING COMPANY, pursuant to which Defendant, CAMBIUM LEARNING COMPANY, agreed to employ Plaintiff, COLLEEN JONES, as Senior Vice President of Metropolitan Teaching and Learning Company, an imprint of Defendant, CAMBIUM LEARNING COMPANY, as is more specifically set forth in the employment agreement (hereinafter the "Jones Employment Agreement").

14.    That pursuant to the Jones Employment Agreement, as an inducement for the sale of Plaintiff, COLEEN JONES', interest in Metropolitan Teaching and Learning Company to Defendant, CAMBIUM LEARNING COMPANY, and for Plaintiff, COLLEEN JONES', employment with Defendant, CAMBIUM LEARNING COMPANY, Plaintiff, COLLEEN JONES, was granted fully vested stock options (hereinafter the " Stock Options"), in addition to such other benefits contained within the Jones Employment Agreement, including those benefits granted pursuant to employee benefit plans from time to time in effect

-3-

generally for company employees.

15.    That the Jones Employment Agreement provided in pertinent part as follows:

> "**Stock Options**.  Initial grant equal to 0.5% of the common equivalent shares outstanding in Cambium Learning Company immediately after the first acquisition of the assets of Metropolitan Teaching and Learning Company but before any further capital contributions.  The exercise price of the options shall be their fair market value at the time of issuance, and they shall be subject to vesting provisions consistent with those under the stock option plans adopted by the Company."

16.    That the Plaintiff, COLLEEN JONES, has made demand of the Defendant, CAMBIUM LEARNING COMPANY, that it allow Plaintiff to exercise the Stock Options provided her in the Jones Employment Agreement, however, Defendant, CAMBIUM LEARNING COMPANY, has repeatedly failed and/or refused to provide information regarding the exercise of the Stock Options and/or to allow Plaintiff, COLLEEN JONES, to exercise the Stock Options.

17.    That Defendant, CAMBIUM LEARNING COMPANY, failed to allow the exercise of Stock Options provided for in the Jones Employment Agreement, notwithstanding assurances made by Defendant, CAMBIUM LEARNING COMPANY, by and through its Chairman and Chief Executive Officer,  Nader Darehshori, that the Stock Options would be exercisable by Plaintiff, COLLEEN JONES, notwithstanding the termination of her employment with Defendant, CAMBIUM LEARNING COMPANY.

18.    That the failure of Defendant, CAMBIUM LEARNING COMPANY, to provide information to Plaintiff, COLLEEN JONES, regarding the exercise of the Stock Options as provided for by the Jones Employment Agreement and the failure to allow the exercise of the Stock Options, constitutes a breach of the Jones Employment Agreement.

19.    That the Plaintiff, COLLEEN JONES, has fully performed her obligations pursuant to the Jones Employment Agreement.

20.    That as a direct and proximate result of the breach of the terms of the Jones Employment Agreement by Defendant, CAMBIUM LEARNING COMPANY, Plaintiff, COLLEEN JONES, has been damaged in an amount subject to proof at trial, including interest thereon, pre and post judgment, attorney's fees and costs of suit.

## AS AND FOR A SECOND CAUSE OF ACTION
## FRAUD

21.    Plaintiffs, REGINALD POWE and COLLEEN JONES, repeat and reallege each and every allegation contained in paragraphs "1" through "20" as if same were more fully set forth herein.

22.    That on or about October 28, 2003, Plaintiff, COLLEEN JONES, entered into an employment agreement with Defendant, CAMBIUM LEARNING COMPANY, pursuant to which Defendant, CAMBIUM LEARNING COMPANY, agreed to employ Plaintiff, COLLEEN JONES, as Senior Vice President of Metropolitan Teaching and Learning Company, an imprint of Defendant, CAMBIUM LEARNING COMPANY, as is more specifically set forth in the employment agreement (hereinafter the "Jones Employment Agreement").

23.    That pursuant to the Jones Employment Agreement, as an inducement for the sale of Metropolitan Teaching and Learning Company to Defendant, CAMBIUM LEARNING COMPANY, and for Plaintiff, COLLEEN JONES', employment with Defendant, CAMBIUM LEARNING COMPANY, Plaintiff, COLLEEN JONES, was granted

fully vested stock options (hereinafter the "Stock Options"), in addition to such other benefits contained within the Jones Employment Agreement, including those benefits granted pursuant to employee benefit plans from time to time in effect generally for company employees.

24.    That Defendant, CAMBIUM LEARNING COMPANY, represented to Plaintiff, COLLEEN JONES, that the Stock Options set forth in the Jones Employment Agreement were fully vested upon execution of the Jones Employment Agreement and were in addition to those stock options granted to employees of Defendant, CAMBIUM LEARNING COMPANY, pursuant to employee benefit plans which might be adopted by the company.

25.    That the representations made by Defendant, CAMBIUM LEARNING COMPANY, by and through its employee, agent and representative, George A. Logue, Executive Vice President, were made to the Plaintiff, COLLEEN JONES, as and for an inducement for Plaintiff, Colleen Jones, to sell her interest in Metropolitan Teaching and Learning Company to Defendant, CAMBIUM LEARNING COMPANY, and for Plaintiff, COLLEEN JONES, to enter into the Jones Employment Agreement and agree to employment with Defendant, CAMBIUM LEARNING COMPANY, as Senior Vice President and Publisher.

26.    That pursuant to the representations made by Defendant, CAMBIUM LEARNING COMPANY, by and through employee, agent and representative, George A. Logue, Executive Vice President, Plaintiff, COLLEEN JONES, agreed to sell her interest in Metropolitan Teaching and Learning Company to Defendant, CAMBIUM LEARNING COMPANY, and  agreed to enter into the Jones Employment Agreement and accept

-6-

employment as Senior Vice President and Publisher, as is more specifically set forth in the Jones Employment Agreement.

27.    That notwithstanding the representations and assurances made by Defendant, CAMBIUM LEARNING COMPANY, by and through its employee, agent and representative, George A. Logue, Executive Vice President, regarding the Stock Options earned by Plaintiff, COLLEEN JONES, upon execution of the Jones Employment Agreement, Defendant, CAMBIUM LEARNING COMPANY, refused repeated requests for information regarding exercise of the Stock Options and failed and/or refused Plaintiff's exercise of the Stock Options as was represented by Defendant, CAMBIUM LEARNING COMPANY.

28.    That the Defendant, CAMBIUM LEARNING COMPANY, has failed and refused, after due demand, to allow Plaintiff, COLLEEN JONES, to exercise the Stock Options.

29.    That the representations of the Defendant, CAMBIUM LEARNING COMPANY, as aforesaid, regarding the grant of the fully vested Stock Options to Plaintiff, COLLEEN JONES, were false when made and were made for the purposes of inducing the Plaintiff, COLLEEN JONES, to sell her interest in and to Metropolitan Teaching and Learning Company to Defendant, and to accept employment with Defendant, CAMBIUM LEARNING COMPANY.

30.    That at all times material hereto, the representations of Defendant, CAMBIUM LEARNING COMPANY, were materially false and misleading and intended to deceive the Plaintiff, COLLEEN JONES, with the intention of securing the sale of Plaintiff's interest in and to Metropolitan Teaching and Learning Company to Defendant, CAMBIUM

-7-

LEARNING COMPANY, and her employment with Defendant, CAMBIUM LEARNING COMPANY.

31.    That at all times material hereto, Defendant, CAMBIUM LEARNING COMPANY, knew that the representations made by it, by and through its employees, agents and representatives, as aforesaid, were materially false and misleading, had no intention of allowing the exercise of the Stock Options and made the representations with the specific intention to deceive the Plaintiff, COLLEEN JONES, of and from her interest in and to Metropolitan Teaching and Learning Company and to secure her employment with Defendant, CAMBIUM LEARNING COMPANY.

32.    That the Plaintiff, COLLEEN JONES, reasonably relied upon the representations of Defendant, CAMBIUM LEARNING COMPANY, made by and through its agents and representatives, as aforesaid, in agreeing to sell her interest in and to Metropolitan Teaching and Learning Company to Defendant, CAMBIUM LEARNING COMPANY, and in accepting employment with Defendant, CAMBIUM LEARNING COMPANY.

33.    That as a direct, proximate and foreseeable result of the fraud of the Defendant, CAMBIUM LEARNING COMPANY, by and through its employees, agents and representatives, as aforesaid, the Plaintiff, COLLEEN JONES, has been damaged in an amount subject to proof.

34.    That the fraud alleged herein was calculated, deliberate, wonton and malicious and justifies an award of punitive damages.

## AS AND FOR A THIRD CAUSE OF ACTION
## BREACH OF CONTRACT

35.     Plaintiffs, REGINALD POWE and COLLEEN JONES, repeat and reallege each and every allegation contained in paragraphs "1" through "34" as if same were more fully set forth herein.

36.     That on or about October 28, 2003, Plaintiff, REGINALD POWE, entered into an employment agreement with Defendant, CAMBIUM LEARNING COMPANY, pursuant to which Defendant, CAMBIUM LEARNING COMPANY, agreed to employ Plaintiff, REGINALD POWE  as Senior Vice President, Customized Education Solutions of Defendant, CAMBIUM LEARNING COMPANY, as is more specifically set forth in the employment agreement (hereinafter the "Powe Employment Agreement").

37.     That pursuant to the Powe Employment Agreement, as an inducement for the sale of Metropolitan Teaching and Learning Company to Defendant, CAMBIUM LEARNING COMPANY, and for Plaintiff, REGINALD POWE'S, employment with Defendant, CAMBIUM LEARNING COMPANY, Plaintiff, REGINALD POWE, was granted fully vested stock options (hereinafter the " Stock Options"), in addition to such other benefits contained within the Powe Employment Agreement, including those benefits granted pursuant to employee benefit plans from time to time in effect generally for company employees.

38.     That the Powe Employment Agreement provided in pertinent part as follows:

> "**Stock Options.** Initial grant equal to 1% of the common equivalent shares outstanding in Cambium Learning Company immediately after the first acquisition of the assets of Metropolitan Teaching and Learning Company but before any further capital contributions. The exercise price of the options shall be their fair market value

-9-

at the time of issuance, and they shall be subject to vesting provisions consistent with those under the stock option plans adopted by the Company."

39.     That the Plaintiff, REGINALD POWE, has made demand of the Defendant, CAMBIUM LEARNING COMPANY, that it allow Plaintiff to exercise the Stock Options provided him in the Powe Employment Agreement, however, Defendant, CAMBIUM LEARNING COMPANY, has repeatedly failed and/or refused to provide information regarding the exercise of the Stock Options and/or to allow Plaintiff, REGINALD POWE, to exercise the Stock Options.

40.     That Defendant, CAMBIUM LEARNING COMPANY, failed to allow the exercise of Stock Options provided for in the Powe Employment Agreement, notwithstanding assurances made by Defendant, CAMBIUM LEARNING COMPANY, by and through its Chairman and Chief Executive Officer, Nader Darehshori, that the Stock Options would be exercisable by Plaintiff, REGINALD POWE, notwithstanding the termination of his employment with Defendant, CAMBIUM LEARNING COMPANY.

41.     That the failure of Defendant, CAMBIUM LEARNING COMPANY, to provide information to Plaintiff, REGINALD POWE, regarding the exercise of the Stock Options as provided for by the Powe Employment Agreement and the failure to allow the exercise of the Stock Options, constitutes a breach of the Powe Employment Agreement.

42.     That the Plaintiff, REGINALD POWE, has fully performed his obligations pursuant to the Powe Employment Agreement.

43.     That as a direct and proximate result of the breach of the terms of the Powe Employment Agreement by Defendant, CAMBIUM LEARNING COMPANY, Plaintiff, REGINALD POWE, has been damaged in an amount to be proven at trial, including

-10-

interest thereon, pre and post judgment, attorney's fees and costs of suit.

## AS AND FOR A FOURTH CAUSE OF ACTION
## FRAUD

44.     Plaintiffs, REGINALD POWE and COLLEEN JONES, repeat and reallege each and every allegation contained in paragraphs "1" through "43" as if same were more fully set forth herein.

45.     That on or about October 28, 2003, Plaintiff, REGINALD POWE, entered into an employment agreement with Defendant, CAMBIUM LEARNING COMPANY, pursuant to which Defendant, CAMBIUM LEARNING COMPANY, agreed to employ Plaintiff, REGINALD POWE, as Senior Vice President, Customized Education Solutions of Defendant, CAMBIUM LEARNING COMPANY, as is more specifically set forth in the employment agreement (hereinafter the "Powe Employment Agreement").

46.     That pursuant to the Powe Employment Agreement, as an inducement for the sale of Plaintiff's interest in Metropolitan Teaching and Learning Company to Defendant, CAMBIUM LEARNING COMPANY, and for Plaintiff, REGINALD POWE'S employment with Defendant, CAMBIUM LEARNING COMPANY, Plaintiff, REGINALD POWE, was granted fully vested stock options (hereinafter the " Stock Options"), in addition to such other benefits contained within the Powe Employment Agreement, including those benefits granted pursuant to employee benefit plans from time to time in effect generally for company employees.

47.     That Defendant, CAMBIUM LEARNING COMPANY, represented to Plaintiff, REGINALD POWE, that the Stock Options set forth in the Powe Employment

-11-

Agreement were fully vested upon execution of the Powe Employment Agreement and were in addition to those stock options granted to employees of Defendant, CAMBIUM LEARNING COMPANY, pursuant to employee benefit plans which might be adopted by the company.

48.    That the representations made by Defendant, CAMBIUM LEARNING COMPANY, by and through its employee, agent and representative, George A. Logue, Executive Vice President, were made to the Plaintiff, REGINALD POWE, as and for an inducement for Plaintiff, REGINALD POWE, to sell his interest in Metropolitan Teaching and Learning Company to Defendant, CAMBIUM LEARNING COMPANY, and for Plaintiff, REGINALD POWE, to enter into the Powe Employment Agreement and agree to employment with Defendant, CAMBIUM LEARNING COMPANY, as Senior Vice President, Customized Education Solutions.

49.    That pursuant to the representations made by Defendant, CAMBIUM LEARNING COMPANY, by and through employee, agent and representative, George A. Logue, Executive Vice President, Plaintiff, REGINALD POWE, agreed to sell his interest in Metropolitan Teaching and Learning Company to Defendant, CAMBIUM LEARNING COMPANY, and  agreed to enter into the Powe Employment Agreement and accept employment as Senior Vice President, Customized Education Solutions, as is more specifically set forth in the Powe Employment Agreement.

50.    That notwithstanding the representations and assurances made by Defendant, CAMBIUM LEARNING COMPANY, by and through its employee, agent and representative, George A. Logue, Executive Vice President, regarding the Stock Options

-12-

earned by Plaintiff, REGINALD POWE, upon execution of the Powe Employment Agreement, Defendant, CAMBIUM LEARNING COMPANY, refused repeated requests for information regarding exercise of the Stock Options and failed and/or refused Plaintiff's exercise of the Stock Options as was represented by Defendant, CAMBIUM LEARNING COMPANY.

51.    That the Defendant, CAMBIUM LEARNING COMPANY, has failed and refused, after due demand, to allow Plaintiff, REGINALD POWE, to exercise the Stock Options.

52.    That the representations of the Defendant, CAMBIUM LEARNING COMPANY, as aforesaid, regarding the grant of the fully vested Stock Options to Plaintiff, REGINALD POWE, were false when made and were made for the purposes of inducing the Plaintiff, REGINALD POWE, to sell his interest in and to Metropolitan Teaching and Learning Company to Defendant, and to accept employment with Defendant, CAMBIUM LEARNING COMPANY.

53.    That at all times material hereto, the representations of Defendant, CAMBIUM LEARNING COMPANY, were materially false and misleading and intended to deceive the Plaintiff, REGINALD POWE, with the intention of securing the sale of Plaintiff's interest in and to Metropolitan Teaching and Learning Company to Defendant, CAMBIUM LEARNING COMPANY, and his employment with Defendant, CAMBIUM LEARNING COMPANY.

54.    That at all times material hereto, Defendant, CAMBIUM LEARNING COMPANY, knew that the representations made by it, by and through its employees, agents

-13-

and representatives, as aforesaid, were materially false and misleading, had no intention of allowing the exercise of the Stock Options and made the representations with the specific intention to deceive the Plaintiff, REGINALD POWE, of and from his interest in and to Metropolitan Teaching and Learning Company and to secure his employment with Defendant, CAMBIUM LEARNING COMPANY.

55.     That the Plaintiff, REGINALD POWE, reasonably relied upon the representations of Defendant, CAMBIUM LEARNING COMPANY, made by and through its agents and representatives, as aforesaid, in agreeing to sell his interest in and to Metropolitan Teaching and Learning Company to Defendant, CAMBIUM LEARNING COMPANY, and in accepting employment with Defendant, CAMBIUM LEARNING COMPANY.

56.     That as a direct, proximate and foreseeable result of the fraud of the Defendant, CAMBIUM LEARNING COMPANY, by and through its employees, agents and representatives, as aforesaid, the Plaintiff, REGINALD POWE, has been damaged in an amount subject to proof.

57.     That the fraud alleged herein was calculated, deliberate, wonton and malicious and justifies an award of punitive damages.

WHEREFORE, Plaintiffs, REGINALD POWE and COLLEEN JONES, demand judgment against Defendant, CAMBIUM LEARNING COMPANY, as follows:

A.     On Plaintiffs' First Cause of Action in an amount to be determined at the trial of this action, including interest thereon, pre and post-judgment, attorneys' fees and the costs of suit;

B.     On Plaintiffs' Second Cause of Action compensatory damages in an

-14-

amount to be determined at the trial of this action, punitive damages in an amount to be determined at the trial of this action, including interest thereon, pre and post-judgment, attorneys' fees and the costs of suit;

        C.    On Plaintiffs' Third Cause of Action in an amount to be determined at the trial of this action, including interest thereon, pre and post-judgment, attorneys' fees and the costs of suit;

        D.    On Plaintiffs' Fourth Cause of Action compensatory damages in an amount to be determined at the trial of this action, punitive damages in an amount to be determined at the trial of this action, including interest thereon, pre and post-judgment, attorneys' fees and the costs of suit; and

        E.    Such other and further relief as the Court may deem just and proper.

Dated: Melville, New York
      January 8, 2008

                Yours, etc.

                RICHARD A. KRASLOW, P.C.

                By: Richard A. Kraslow, Esq.
                *Of Counsel to Alan G. Kraut, Esq.*
                Attorneys for Plaintiffs
                REGINALD POWE and COLLEEN JONES
                425 Broad Hollow Road, Suite 206
                Melville, New York  11747
                (631) 756-8300

TO:    CAMBIUM LEARNING COMPANY a/k/a CAMBIUM LEARNING, INC.
       Defendant
       313 Speen Street
       Natick, Massachusetts  01760

STATE OF NEW YORK : COUNTY OF SUFFOLK

        RICHARD A. KRASLOW, ESQ., an attorney duly admitted to practice before all the Courts of the State of New York, affirms the following under the penalties of perjury:

        That he is a member of the firm of RICHARD A. KRASLOW, P.C., *Of Counsel to Alan G. Kraut, Esq.,* the attorney of record for the Plaintiffs in the within action. That he has read the foregoing Summons and Complaint and knows the contents thereof. That the same is true to his own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters he believes them to be true.

        Affirmant further states that the source of his information and the grounds of his belief as to all matters therein not stated upon his knowledge are: correspondence had with the said Plaintiffs which are in affirmant's possession and other pertinent data relating thereto.

        Affirmant further states that the reason this Verification is made by him and not by Plaintiffs is that Plaintiffs do not reside in the county where your affirmant maintains his office.

Dated: Melville, New York
      January 8, 2008

                                          _____
                                      RICHARD A. KRASLOW, ESQ.

# EXHIBIT B

Cambium Learning Company

October 28, 2003

Mr. Reginald Powe
Metropolitan Teaching and Learning Company
33 Irving Place
New York, NY 10003

Dear Reggie:

Cambium Learning Company (the "Company") is pleased to offer you employment as Senior Vice President, Customized Education Solutions, based in New York City. This letter and your response will constitute the agreement between you and the Company concerning the terms and conditions of that employment until such time as this letter is replaced by a formal employment contract, incorporating the terms set forth below and such other terms as are customary to formal agreements in the United States for positions generally comparable to that offered you the Company.

1.    **Employment and Position.** Employment will commence on October 28, 2003, or such earlier date to which you and the Company agree. You will be employed on a full-time basis reporting to George A. Logue, Executive Vice President, Cambium Learning Company. It is understood that you have invested in Advanced Assessment Systems, a company that does business with the Company, and that you serve on outside Boards of Directors and will occasionally need to attend to these responsibilities. Your duties will include those intrinsic to your position and such other duties, reasonably consistent with your position, as may be assigned to you from time to time. Your primary responsibilities will be to work with key school personnel nationwide for the purpose of providing educational solutions with all Cambium Learning Company product and services, including, but not limited to, product from the Metropolitan Teaching and Learning imprint. Target school districts and travel priorities will be mutually agreed upon. Attendance and full participation at key national, state and school district meetings will be essential.

2.    **Compensation and Benefits.**

**Base Salary.** During employment, the Company will pay you a base salary at the rate of $175,000 per year, payable in accordance with the regular payroll practices of the Company and subject to increase from time to time by the Company in its discretion.

**Merit Increase.** Your salary will be reviewed on an annual basis and will be eligible for a merit increase in November 2004.

**Bonuses.** You will be eligible to earn a performance bonus annually during employment. Bonuses will be earned on the basis of the Company's fiscal year and will be pro-rated for any partial year of service. There will be two components to your bonus program:

powe employment terms.DOC

A. A fixed percentage of salary based upon achievement of business objectives, as determined by the company.

B. Commission component, to be determined, with no cap on earnings. Commissions will be paid on the generation of both stock product and customized solution purchase orders by key school districts as mutually agreed upon targets.

**Stock Options.** Initial grant equal to 1% of the common equivalent shares outstanding in Cambium Learning Company immediately after the first acquisition of the assets of Metropolitan Teaching and Learning Company but before any further capital contributions. The exercise price of the options shall be their fair market value at the time of issuance, and they shall be subject to vesting provisions consistent with those under the stock option plans adopted by the Company.

**Employee Benefit Plans.** You will be entitled to participate in all employee benefit plans from time to time in effect generally for Company employees, subject to plan terms and applicable Company policies. Benefit plans have not yet been established for the Cambium Learning Company, and benefits are subject to change from time to time, but we currently expect to offer group health and dental plans, group term life insurance, long-term disability insurance and a retirement plan.

**Vacation.** You will be entitled to earn up to three weeks of vacation per year. Vacation allowance will be reviewed on an annual basis.

**Business Expenses.** The Company will pay or reimburse you for all reasonable business expenses incurred or paid by you in the performance of your duties and responsibilities for the Company, subject to Company reimbursement policies in effect from time to time. The Company will provide you standard IRS mileage reimbursement should your personal vehicle be used for Company business purposes.

**Withholding.** All payments made by the Company under this Agreement shall be reduced by any tax or other amounts required to be withheld by the Company under applicable law.

3. **Termination of Employment.** Employment shall continue for a term of two years (the "Term"), unless terminated earlier by you or the Company.

If the Company terminates your services prior to the end of the Term for any reason other than Cause (as defined below), your death or permanent disability, it will pay you your accrued base salary through the date of termination, and also pay you your base salary for the remainder of the Term, in accordance with its regular payroll practices, reduced by 50% of any compensation received by you from any other employment you secure during the remainder of the Term.

If the Company terminates your services prior to the end of the Term for Cause (as defined below) or on account of your death, the Company shall pay you your accrued base salary through the date of termination, but will not be obligated to make any additional payments to you.

powe employment terms.DOC

If the Company terminates your employment because of your permanent disability, the Company will continue your base salary and will continue to contribute to the premium cost of your benefits, to the extent permitted by plan terms, for up to 90 days from your date of termination or, if less, until you qualify for benefits under long-term disability insurance provided by the Company. The Company may terminate your employment if you are disabled from working for more than 90 days in any twelve month period.

If you terminate your employment prior to the end of the Term, the Company shall pay you your accrued base salary through the date of termination, but shall not be obligated to make any additional payments to you. You agree to provide at least one months' written notice prior to terminating your employment with the Company.

For this purpose, "Cause" shall mean your willful failure to perform your duties, material negligence in the performance of your duties; material uncured breach of any term of your employment agreement; fraud, embezzlement or other material dishonesty; conviction of, or a plea of nolo contendere to, a felony or other crime involving moral turpitude; or other conduct that is materially harmful to the business, interests, or reputation of the Company or any of its affiliates.

4.  **Confidential Information and Restricted Activities.**

**Confidentiality and Assignment of Rights.** You agree that you will never use or disclose to any other person or entity (except as required by applicable law or for the proper performance of your duties and responsibilities to the Company) any confidential information that is proprietary to the Company or any of its affiliates. You also agree to assign to the Company any intellectual property which you create or develop during employment (alone or with others, on or off Company premises) which relates to the business of the Company or any of its affiliates or which utilizes the confidential information, facilities or equipment of the Company or its affiliates.

**Conflicts of Interest and Non-Competition.** You agree to abide by the policies of the Company with respect to conflicts of interest, disparagement of the Company and publicity, as in effect from time to time. You also agree that (a) during the Term, you will not compete with the Company or its affiliates (it being understood that the time you devote to Advanced Assessment Systems, as its business is presently being conducted, shall not be deemed competitive with the Company), and (b) during the Term and for a period of six months thereafter, you will not solicit the employees or customers of the Company and its affiliates.

5.  **Conflicting Agreements.** In signing this agreement, you give the Company assurance that your signing this agreement and the performance of your obligations under it will not breach or be in conflict with any other agreement to which you are a party or are bound and that you are not now subject to any covenants against competition or similar covenants or court order that would affect the performance of your obligations under this agreement. You agree that you will not disclose to or use on behalf of the Company any proprietary information of a third party without that party's consent.

6.  **Miscellaneous.** This letter contains the entire agreement between you and the Company and replaces all prior communications, agreements and understandings,

powe employment terms.DOC

written or oral, with respect to the terms and conditions of your employment. This agreement may not be modified or amended, and no breach shall be deemed to be waived, unless agreed to in writing by you and the Company. This is a New York contract and shall be governed and construed in accordance with the laws of the State of New York, without regard to the conflict of laws principles thereof.

If the foregoing is acceptable to you, please sign the enclosed copy of this letter in the space provided and return it to me, at which time this letter and that copy will take effect as a binding agreement between you and the Company on the basis set forth above.

Sincerely yours,

Cambium Learning Company

4/5/03

By: George M. Logue
Executive Vice President

Accepted and Agreed:

Reginald Powe

Date: 10/28/03

# EXHIBIT C

Cambium Learning Company

October 28, 2003

Ms. Colleen Jones
Metropolitan Teaching and Learning Company
33 Irving Place
New York, NY 10003

Dear Colleen:

Cambium Learning Company (the "Company") is pleased to offer you employment as Senior Vice President, Publisher, Metropolitan Teaching and Learning Company, an imprint of the Company, based in New York City. This letter and your response will constitute the agreement between you and the Company concerning the terms and conditions of that employment until such time as this letter is replaced by a formal employment contract, incorporating the terms set forth below and such other terms as are customary to formal agreements in the United States for positions generally comparable to that offered you the Company.

1.     **Employment and Position.** Employment will commence on October 28, 2003, or such earlier date to which you and the Company agree. You will be employed on a full-time basis reporting to George A. Logue, Executive Vice President, Cambium Learning Company. It is understood that you serve on outside Boards of Directors and will occasionally need to attend to these responsibilities. Your duties will include those intrinsic to your position and such other duties, reasonably consistent with your position, as may be assigned to you from time to time. Your primary responsibilities will be to manage Metropolitan staff, as well work with personnel at other Company imprints, for the purpose of creating highly competitive products in those disciplines in which we choose to publish. Building and maintaining relationships with key national, state and local education leaders will be essential. A key aspect of the position will be to devise ways to provide educational solutions with all Cambium Learning Company products and services, including, but not limited to, products from the Metropolitan Teaching and Learning imprint. Target states and school districts and travel priorities will be mutually agreed upon.

2.     **Compensation and Benefits.**

**Base Salary.** During employment, the Company will pay you a base salary at the rate of $175,000 per year, payable in accordance with the regular payroll practices of the Company and subject to increase from time to time by the Company in its discretion.

**Merit Increase.** Your salary will be reviewed on an annual basis and will be eligible for a merit increase in November 2004.

**Bonuses.** You will be eligible to earn a performance bonus annually during employment. Bonuses will be earned on the basis of the Company's fiscal year and will be pro-rated for

CJ Powe employment terms.doc

-1-

any partial year of service. Bonus will be a fixed percentage of salary based upon achievement of business objectives, as determined by the Company.

**Stock Options.** Initial grant equal to 0.5% of the common equivalent shares outstanding in Cambium Learning Company immediately after the first acquisition of the assets of Metropolitan Teaching and Learning Company but before any further capital contributions. The exercise price of the options shall be their fair market value at the time of issuance, and they shall be subject to vesting provisions consistent with those under the stock option plans adopted by the Company.

**Employee Benefit Plans.** You will be entitled to participate in all employee benefit plans from time to time in effect generally for Company employees, subject to plan terms and applicable Company policies. Benefit plans have not yet been established for the Cambium Learning Company, and benefits are subject to change from time to time, but we currently expect to offer group health and dental plans, group term life insurance, long-term disability insurance and a retirement plan.

**Vacation.** You will be entitled to earn up to three weeks of vacation per year. Vacation allowance will be reviewed on an annual basis.

**Business Expenses.** The Company will pay or reimburse you for all reasonable business expenses incurred or paid by you in the performance of your duties and responsibilities for the Company, subject to Company reimbursement policies in effect from time to time. The Company will provide you standard IRS mileage reimbursement should your personal vehicle be used for Company business purposes.

**Withholding.** All payments made by the Company under this Agreement shall be reduced by any tax or other amounts required to be withheld by the Company under applicable law.

3.    **Termination of Employment.**  Employment shall continue for a term of two years (the "Term"), unless terminated earlier by you or the Company.

If the Company terminates your services prior to the end of the Term for any reason other than Cause (as defined below), your death or permanent disability, it will pay you your accrued base salary through the date of termination, and also pay you your base salary for the remainder of the Term, in accordance with its regular payroll practices, reduced by 50% of any compensation received by you from any other employment you secure during the remainder of the Term.

If the Company terminates your services prior to the end of the Term for Cause (as defined below) or on account of your death, the Company shall pay you your accrued base salary through the date of termination, but will not be obligated to make any additional payments to you.

If the Company terminates your employment because of your permanent disability, the Company will continue your base salary and will continue to contribute to the premium cost of your benefits, to the extent permitted by plan terms, for up to 90 days from your date of termination or, if less, until you qualify for benefits under long-term disability

insurance provided by the Company. The Company may terminate your employment if you are disabled from working for more than 90 days in any twelve month period.

If you terminate your employment prior to the end of the Term, the Company shall pay you your accrued base salary through the date of termination, but shall not be obligated to make any additional payments to you. You agree to provide at least one months' written notice prior to terminating your employment with the Company.

For this purpose, "Cause" shall mean your willful failure to perform your duties, material negligence in the performance of your duties; material uncured breach of any term of your employment agreement; fraud, embezzlement or other material dishonesty; conviction of, or a plea of nolo contendere to, a felony or other crime involving moral turpitude; or other conduct that is materially harmful to the business, interests, or reputation of the Company or any of its affiliates.

4.    **Confidential Information and Restricted Activities.**

**Confidentiality and Assignment of Rights.** You agree that you will never use or disclose to any other person or entity (except as required by applicable law or for the proper performance of your duties and responsibilities to the Company) any confidential information that is proprietary to the Company or any of its affiliates. You also agree to assign to the Company any intellectual property which you create or develop during employment (alone or with others, on or off Company premises) which relates to the business of the Company or any of its affiliates or which utilizes the confidential information, facilities or equipment of the Company or its affiliates.

**Conflicts of Interest and Non-Competition.** You agree to abide by the policies of the Company with respect to conflicts of interest, disparagement of the Company and publicity, as in effect from time to time. You also agree that (a) during the Term, you will not compete with the Company or its affiliates, and (b) during the Term and for a period of six months thereafter, you will not solicit the employees or customers of the Company and its affiliates.

5.    **Conflicting Agreements.** In signing this agreement, you give the Company assurance that your signing this agreement and the performance of your obligations under it will not breach or be in conflict with any other agreement to which you are a party or are bound and that you are not now subject to any covenants against competition or similar covenants or court order that would affect the performance of your obligations under this agreement. You agree that you will not disclose to or use on behalf of the Company any proprietary information of a third party without that party's consent.

6.    **Miscellaneous.** This letter contains the entire agreement between you and the Company and replaces all prior communications, agreements and understandings, written or oral, with respect to the terms and conditions of your employment. This agreement may not be modified or amended, and no breach shall be deemed to be waived, unless agreed to in writing by you and the Company. This is a New York contract and shall be governed and construed in accordance with the laws of the State of New York, without regard to the conflict of laws principles thereof.

CJ Powe employment terms.doc

If the foregoing is acceptable to you, please sign the enclosed copy of this letter in the space provided and return it to me, at which time this letter and that copy will take effect as a binding agreement between you and the Company on the basis set forth above.

Sincerely yours,

Cambium Learning Company

4/5/03

By: George A. Logue
Executive Vice President

Accepted and Agreed:

Colleen Jones

Date: 10 / 28 / 03

# EXHIBIT D

# CAMBIUM LEARNING, INC.

## Amended and Restated

## 2004 Stock Compensation Plan

### April 28, 2004

### As Amended on April 12, 2006

# ARTICLE 1
## PURPOSE AND ADMINISTRATION

    **1.1**    <u>Purpose</u>. The Company established this Plan to attract, retain and motivate employees and vendors of the Company who will most assist the Company in achieving its long-term goals and objectives and to provide an opportunity to acquire an interest in the Company through the granting of various stock-based performance awards. Capitalized terms are defined in <u>Appendix A</u>. Except as otherwise noted, all references to laws, cash, currencies, accounting standards, government agencies, stock exchanges, or anything else refer to those of, or applicable with respect to, the United States of America.

    **1.2**    <u>Key Terms</u>. The Plan's key terms are summarized below.

| General Information | |
|---|---|
| Plan Sponsor: | Cambium Learning, Inc. ("Company"). |
| Effective Date: | April 28, 2004 (Amended on April 12, 2006) |
| Approval: | This Amended and Restated Plan was approved by the Company's board of directors on April 12, 2006. |
| Company Stock Subject to Awards: | Common Stock ("Stock"). |
| Number of Authorized Shares: | 7,000,000 Shares of Stock are authorized for Awards or Award payment under the Plan. Shares subject to lapsed or cancelled Awards or forfeited Restricted Stock shall again be available for Awards under the Plan. |
| Per Employee Limit: | The total number of Shares pursuant to Awards granted hereunder to any one employee of the Company during any one – year period shall not exceed 2,000,000. |
| Governing Law: | Except to the extent the federal law of the United States applies, the Plan and Awards shall be interpreted, administered, and otherwise be subject to the laws of Delaware, without regard to principles of conflicts of laws. |
| Eligibility | |
| Persons Eligible for Awards: | Awards may be granted to: |
| | Any Director of the Company |
| | Any Employee of the Company, any Parent, a Subsidiary or an Affiliate. |
| | Any Consultant to the Company, any Parent, a Subsidiary or an Affiliate. |
| | Any customer or supplier to the Company, any Parent, a Subsidiary or an Affiliate. |

*Cambium Learning Stock Compensation Plan*

| Awards | |
|---|---|
| Types of Awards That May Be Granted: | Incentive Stock Options. Non-Qualified Options. Restricted Stock. Bonus Stock. Performance Awards. Cash Awards. |
| Method of Payment: | Except as provided in the applicable Award Agreement or other Plan provisions, the following methods of payment will be acceptable if permitted by the Committee in its discretion: Cash. Stock. |
| Securities Law Compliance: | No certificates for Shares will be issued to a Participant until the Company has completed all steps required by law to be taken in connection with the issue and sale of the Shares, including without limitation, receipt of any agreements or representations from the Participant necessary to prevent a resale or distribution of the Shares in violation of federal or state securities laws. |
| Vesting | |
| Normal Vesting: | Except as provided with respect to a Change of Control, an Award shall vest (i.e., become exercisable or cease to be subject to a forfeiture restriction, as applicable) at the time or times specified in the Award Agreement. |
| Accelerated Vesting: | The Committee, in its sole discretion, may provide that an Award shall become fully vested in the event of a Change of Control of the Company. |
| Exercise Period | |
| Award Term: | Except as provided in the applicable Award Agreement, an Award that must be exercised shall have a 10 year term (i.e., it cannot be exercised thereafter). |

### 1.3    Administration.

1.3.1    *Committee.* The Board shall appoint a Committee consisting of not less than three Directors to serve as the Plan administrator. Actions of the Committee shall be taken by a vote of a majority of its members or by a written instrument signed by a majority of its members. Each member of the Committee appointed by the Board shall serve until that member's resignation or removal by the Board, or until that member otherwise ceases to qualify as a member of the Committee. To the extent required for compensation realized from Awards

*Cambium Learning Stock Compensation Plan*

under the Plan to be deductible by the Company pursuant to Code Section 162(m), the members of the Committee shall be "outside directors" within the meaning of Code Section 162(m).

     *1.3.2    Powers of the Committee.* The Committee shall have full authority and discretion to take any actions that it may deem necessary or advisable for the administration of this Plan, including (a) selecting Award recipients, making Awards, prescribing Award terms, and documenting them through Award Agreements, (b) determining the Fair Market Value of the Stock as of any date, (c) prescribing administrative forms to be used under this Plan, (d) interpreting the Plan and any Award Agreements, (e) modifying Awards to Participants who are foreign nationals or employed outside of the United States in order to recognize differences in local law, tax policies, or customs, and (f) requiring that stock certificates evidencing Stock issued pursuant to this Plan bear a legend setting forth applicable restrictions or requirements.

     *1.3.3    Committee Determinations Final.* The determination of the Committee on all matters relating to this Plan or any Award shall be final, binding, and conclusive on Participants, beneficiaries and all other persons.

     *1.3.4    No Liability.* No member of the Committee or any of its agents shall be liable for any action or determination with respect to this Plan or any Award.

     **1.4**    **Shares Available for Awards.** The maximum aggregate number of Shares of Stock that may be transferred pursuant to Awards granted under this Plan is specified in the Key Terms. These Shares may be authorized but unissued Stock, authorized and issued Stock held in the Company's treasury, Stock acquired by the Company for the purposes of this Plan, or Stock held in a grantor or other trust established by the Company.

     **1.5**    **Adjustments for Changes in Capitalization.** The number of Shares covered by an Award, the Exercise Price under each outstanding Award, the number of Shares available for Awards, the number of Shares that may be subject to Awards to any one Participant, and all other similar parameters may, in the Committee's discretion, be proportionately adjusted for any increase or decrease in the number of issued Shares resulting from a stock split, reverse stock split, stock dividend, combination or reclassification of Stock, or any other increase or decrease in the number of issued Shares (other than by conversion of convertible securities) effected without the Company's receipt of consideration.

**ARTICLE 2**
**AWARDS**

     **2.1**    **Agreements Evidencing Awards.** Each Award shall be evidenced by a written Award Agreement, which shall contain such provisions as the Committee in its discretion deems necessary or desirable. By accepting an Award pursuant to this Plan, a Participant agrees that the Award shall be subject to all of the terms of this Plan and the applicable Award Agreement.

     **2.2**    **Options.** The Committee may grant Incentive Stock Options (also referred to as "ISOs") and Non-Qualified Options (also referred to as "NQOs") to purchase Stock in such amounts and subject to such terms and conditions as the Committee shall determine in its

*Cambium Learning Stock Compensation Plan*

discretion. Each Option intended to be an ISO shall be designated as an ISO in the applicable Award Agreement. An ISO may only be granted before the 10th anniversary of the Plan's Effective Date and only to a Person who is an Employee of the Company or a Subsidiary on the date of grant.

        *2.2.1    ISO $100,000 Limitation.* The aggregate Fair Market Value of Shares (determined at the time the ISO is granted) for which ISOs are exercisable for the first time by a Participant during a given calendar year (under all plans of the Company or any Parent or Subsidiary) shall not exceed $100,000.

        *2.2.2    Term.* Each Award Agreement granting an Option shall set forth the term during which it shall remain outstanding, as prescribed by the Committee in its discretion. No Option shall be exercisable more than 10 years after the date of grant. The term of an ISO granted to an Employee who is a Ten Percent Holder on the grant date shall not exceed 5 years.

        *2.2.3    Exercise Price.* Each Award Agreement granting an Option shall set forth the per Share Exercise Price the Participant must pay to exercise the Option. The Exercise Price per Share shall be determined by the Committee in its discretion, subject to the following special rules:

        (a) <u>Par Value Minimum</u>. The Exercise Price shall not be less than the par value of a Share, if any.

        (b) <u>ISO Minimum</u>. The Exercise Price of an ISO shall not be less than 100% of the Fair Market Value per Share on the date of grant (110% for a Ten Percent Holder on the grant date).

        (c) <u>Options Issued to Named Executives While Stock is a Listed Security</u>. While Stock is a Listed Security, the per share Exercise Price shall not be less than 100% of the Fair Market Value on the date of grant if the Participant is a Named Executive at the time of the grant, and the Committee intends the Option to qualify as performance-based compensation under Code Section 162(m).

        (d) <u>Substitute Options</u>. The preceding restrictions do not apply to substitute Options granted to replace options previously awarded by an acquired entity.

        *2.2.4    Exercise of Option.* An Option shall vest and become exercisable in accordance with the Key Terms and the Award Agreement granting it. Except as otherwise provided herein or in the applicable Award Agreement, all Options shall be exercisable during the lifetime of the Participant only by the option, and in the case of the Participant's death, his or her executor. Once an Option becomes exercisable it shall remain exercisable until it expires or is cancelled. An Option may be exercised by filing a written exercise notice with the Committee, on the form and in the manner the Committee prescribes, paying the Exercise Price for the Shares being purchased, paying any taxes that need to be withheld in a manner acceptable to the Committee, and furnishing any other documents or information the Committee requests. The number of Shares available under the Option shall be decreased by the number of Shares as to which the Option is exercised.

*Cambium Learning Stock Compensation Plan*

        *2.2.5   Minimum Exercise Requirements.*  The Committee may require a Participant who is partially exercising an Option to buy a minimum number of Shares and only whole Shares.

        *2.2.6   Methods of Payment.*  The Committee in its sole discretion may permit a Participant to pay the Exercise Price in any manner listed in the Key Terms, or by any other manner provided in the Award Agreement or expressly provided by the Committee.  To the extent otherwise allowed: (i) if payment is made by promissory note, it shall be with such recourse, interest, security, repayment, and other terms as the Committee prescribes in its discretion (subject to any Applicable Law relating to minimum consideration for stock), (ii) if Shares are tendered, they shall then have a Fair Market Value equal to the aggregate Exercise Price (and to the extent required by the Committee, in the case of Stock previously acquired, directly or indirectly, from the Company, the Participant must have owned those Shares for more than 6 months or such other period as may be required to avoid an adverse accounting charge) and (iii) if payment is made by means of a cashless exercise, the aggregate Exercise Price shall be paid by withholding Shares with an aggregate Fair Market Value at exercise equal to the aggregate Exercise Price from the Stock acquired by exercising the Option.

**2.3**    **Restricted Stock.**

        *2.3.1   Awards.*  The Committee may offer Restricted Stock to Participants, in such amounts, at the purchase price, if any, and subject to such terms, conditions, and vesting restrictions as the Committee shall determine in its discretion.  A Participant who must pay for his for her Restricted Stock may pay for it any way that an Option's Exercise Price may be paid, and shall be subject to the same tax withholding payment requirements.  To the extent required by Applicable Laws, Restricted Stock Awards may only be granted before the 10th anniversary of the Plan's Effective Date.

        *2.3.2   Certificate Issuance.*  The Company shall issue a certificate or certificates for Restricted Stock acquired by a Participant in the Participant's name, but the Company shall retain the certificate until the restrictions on the Restricted Stock lapse, except as otherwise determined by the Committee.

        *2.3.3   Forfeiture.*  When a Participant's Service terminates for any reason, unvested Restricted Stock that was granted to, but not purchased by, a Participant shall be forfeited, and unvested Restricted Stock that the Participant purchased may be repurchased by the Company for the lesser of its purchase price or its then Fair Market Value within 120 days following the Participant's termination of Service.

**2.4**    **Bonus Stock.**  The Committee may offer Bonus Stock to Participants, in such amounts, at the purchase price, if any, as the Committee shall determine in its discretion.  A Participant who must pay for his for her Bonus Stock may pay for it any way that an Option's Exercise Price may be paid, and shall be subject to the same tax withholding payment requirements.  To the extent required by Applicable Laws, Bonus Stock Awards may only be granted before the 10th anniversary of the Plan's Effective Date.  The Company shall deliver to a Participant a certificate or certificates for Bonus Stock acquired by such Participant in the Participant's name.

*Cambium Learning Stock Compensation Plan*

**2.5    Performance Awards.** The Committee may grant Performance Awards to Participants, in such amounts, at the purchase price, if any, and subject to such terms, conditions, and vesting restrictions as the Committee shall determine in its discretion. Performance Awards, in whole or in part, may be (i) denominated or payable in cash ("Cash Awards"), or (ii) denominated or payable in, valued by reference to, or otherwise based on or related to Stock. A Participant who must pay for his for her Performance Award may pay for it any way that an Option's Exercise Price may be paid, and shall be subject to the same tax withholding payment requirements.

**2.6    Cash Awards.** If the payment or delivery of (or lapsing of restrictions with respect to) any Stock awarded to a Participant under the Plan is subject to the imposition of any federal, state or local income tax, the Committee, in its discretion, either at the time the Award is granted or thereafter, may also grant the Participant a Cash Award.

**2.7    Tandem Awards.** Unless prohibited by law or regulation, the Committee may make grants of Awards pursuant to the Plan (except grants of ISOs) "in tandem" (i.e., the Participant may be given the right to select the form of the grant) or in combination with other grants. The Committee may also make a Cash Award in connection with a grant of a Performance Award, Bonus Stock and/or Restricted Stock.

**2.8    Maximum Award.** The Stock that may be issued to any one individual pursuant to this Plan may not exceed, in the aggregate, 2,000,000 shares.

**2.9    Non-Transferability.**

*2.9.1    General.* Awards (as adjusted for changes in capitalization) may not be sold, pledged, assigned, hypothecated, transferred, or otherwise encumbered or disposed of except by will or by the laws of descent or distribution, or as specifically provided in this Plan or the applicable Award Agreement, or as the Committee in its discretion permits.

*2.9.2    Beneficiaries Designations Permitted.* The Committee may permit a Participant to designate the beneficiary who will inherit an Award when the Participant dies.

*2.9.3    Limited Transferability Rights.* Unless otherwise prohibited by an Award Agreement, the Committee or Applicable Law, a Participant may give an Award that is not an ISO to an immediate family member or an *inter vivos* trust or testamentary trust from which the Award (or the Award proceeds) will be transferred after the Participant's death. The preceding sentence also applies to ISO Awards, but only to the extent that transferability does not preclude them from being ISOs under Code Section 422. An immediate family member is a Participant's natural or adopted child, stepchild, grandchild, parent, stepparent, grandparent, spouse, sibling, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law. A transfer shall not relieve a Participant from his or her obligations under this Plan or the applicable Award Agreement with respect to the transferred Award or Award proceeds.

**2.10    Information.** To the extent required by Applicable Laws, the Committee shall give Participants information about the Company, Awards, or other matters.

*Cambium Learning Stock Compensation Plan*

### 2.11    Termination of Director, Employment, or Consultant Relationship.

*2.11.1 Committee Determinations.* The Committee may in its discretion determine whether any leave of absence (including a disability absence) constitutes a termination of Service, and the impact, if any, of leaves of absence on Awards. The Committee also shall have the right to determine whether a Participant's Service terminated for Cause and his or her Service termination date, which the Committee may retroactively deem to be the date of the act or omission that was Cause for termination. The Committee also shall have the right to determine that a Participant's Service terminated for Cause if the Participant's Service terminated for some other reason (such as resignation or layoff) while the Company had Cause to terminate the Participant, whether or not then known.

*2.11.2 Effect of Termination on Options.* Except as otherwise provided herein or in the applicable Award Agreement, an Option shall automatically expire if not exercised within 30 days after the termination by the Company (without Cause) of a Participant's Service for any reason or death or disability of a Participation; provided, however, that an Option may only be exercised after the termination of a Participant's Service to the extent it was exercisable immediately prior to such termination of Service, but in no event after the expiration date of the Award as set forth in the Award Agreement; provided, further, that in the event of a Participant's voluntary resignation from and termination of Service with the Company, an Option shall automatically and immediately expire if not exercised prior to such Participant's final day of Service. Notwithstanding anything herein to the contrary, if the Committee determines that the Participant's Service terminated due to Cause, the Participant's Option shall expire immediately, whether it is vested or unvested.

*2.11.3 Termination of Award.* To the extent that the Participant is not entitled to exercise an Option at his or her termination of Service, or if the Participant does not exercise the Option before it ceases to be exercisable, the Award shall terminate.

## ARTICLE 3
## TAX WITHHOLDING

The Company may defer making payment or delivery of any Shares to a Participant until satisfactory arrangements have been made for the payment of any federal, state or local income taxes required to be withheld with respect to such payment or delivery. A Participant may, in the Committee's discretion, elect to have the Company withhold Shares having an aggregate value equal to the amount required to be withheld. In the case of a Participant who is subject to the reporting requirements of Section 16(a) of the Securities Act, such election must be made on an irrevocable basis at least six months prior to the date such Shares would otherwise be delivered hereunder. If no such election is in effect, the Company nevertheless has the right to (i) impose a mandatory withholding of such Shares, (ii) withhold cash in an amount sufficient to satisfy any tax withholding obligations with respect to a Participant from the compensation then or thereafter payable to the Participant, or (iii) condition the delivery of Shares to the Participant upon the payment to the Company by such Participant of an amount sufficient to satisfy any tax withholding obligations with respect to such Participant. In addition, the Company may

*Cambium Learning Stock Compensation Plan*

withhold Shares equal to all or a portion of the purchase price of the Shares then being purchased. The value of fractional Shares remaining after payment of the withholding taxes or the Exercise Price will be paid to the Participant in cash. Shares withheld will be valued at Fair Market Value at the close of the regular business day on which the Option is exercised.

## ARTICLE 4
## MISCELLANEOUS

### 4.1    Plan Amendment or Termination; Award Modification.

*4.1.1    Plan Amendment or Termination.* The Board may at any time amend, alter, suspend, or terminate this Plan, but no amendment, alteration, suspension or discontinuation shall apply to an outstanding Award to the extent the Committee determines it would materially and adversely affect the Participant's rights under the Award, unless he or she otherwise consents in writing.

*4.1.2    Stockholder Approval.* The Board shall seek stockholder approval for any amendment to the extent required by or appropriate under Applicable Laws, including Code Section 422 (relating to ISOs), Rule 16b-3, or Code Section 162(m), unless the Board decides that compliance is unnecessary or undesirable.

*4.1.3    Modification of Awards.* The Committee may modify an Award, accelerate the rate at which an Award may be exercised, extend its term, or change any other feature, but no modification shall apply to an Award to the extent the Committee determines it would materially and adversely affect the Participant's rights under the Award, unless he or she otherwise consents in writing or unless consideration is provided that, in the sole judgment of the Committee, is fair compensation for such action.

*4.1.4    Award Buy-Backs.* The Committee may at any time offer to buy an Award back for cash, Shares, or a new Award. If the Participant accepts the offer, the repurchased Award will be cancelled.

### 4.2    Special Rules Triggered by Business Transactions.

*4.2.1    Change of Control.* In the event of a Change of Control, the Committee, in its sole discretion, may provide that immediately prior to such Change of Control (i) all outstanding Options granted under the Plan will become exercisable, (ii) all restrictions on Restricted Stock will lapse, and/or (iii) all Performance Share Awards will be paid out pro-rata based on the level of performance attained as of such date.

*4.2.2    Substitution of Options for Acquired-Company Options.* Notwithstanding any other provision in this Plan, in the event the Company acquires (whether by purchase, merger, or otherwise) all or substantially all of outstanding capital stock or assets of another company or in the event of any reorganization or other transaction qualifying under Code Section 424, the Committee may substitute Options under this Plan for options issued by the acquired, etc. company if (a) the excess of the aggregate Fair Market Value of the Shares subject to an

*Cambium Learning Stock Compensation Plan*

Option immediately after the substitution over their aggregate Exercise Price is not more than the similar excess immediately before such substitution, and (b) the new Option does not provide additional benefits, including a longer exercise period. Unless the Committee otherwise elects, the aggregate Exercise Price for all Shares subject to a substitute Option and their aggregate Fair Market Value on the substitute Option's grant date shall equal the aggregate exercise price for all shares subject to the option being replaced and their aggregate Fair Market Value on the substitute Option's grant date.

### 4.3    Nature of Payments.

*4.3.1    Consideration.*  Unless the Committee specifies otherwise or Applicable Law requires otherwise, with respect to any Award to a Participant of Restricted Stock or Bonus Stock, or of Stock in connection with a Performance Award, past services of that Participant equal to the aggregate Fair Market Value of such Stock shall constitute the only consideration paid upon issuance of such Stock. If at any time consideration other than past services is required by Applicable Law with respect to such Award, such consideration must be paid to the Company within the 60 days immediately following the grant of the Award.

*4.3.2    Awards Separate from Salary.*  Except for Bonus Stock issued as compensation in lieu of cash, a Participant's Awards shall be in addition to salary and other compensation payable to the Participant, but Awards shall not be taken into account in determining any benefits under any pension, retirement, profit-sharing, bonus, life insurance, or other benefit plan or under any agreement with the Participant, unless such plan or agreement provides specifically otherwise.

### 4.4    Non-Uniform Determinations.  The Committee's determinations under this Plan need not be uniform. The Committee shall be entitled, among other things, to make non-uniform and selective determinations, and to enter into non-uniform Award Agreements, as to the persons to receive Awards, the terms and provisions of Awards or Award Agreements, and the treatment of leaves of absence or other terminations of Service.

### 4.5    Effective Date. This Plan was approved by the Company's stockholders on April 28, 2004 and became effective on the Effective Date.

### 4.6    Conditions Precedent to Issuance of Awards or Shares.

*4.6.1    Issuance of Stock.*  The Company shall not be obligated, and shall have no liability for failure, to issue or deliver any Shares unless doing so would comply with Applicable Laws, as determined by the Committee in consultation with the Company's legal counsel. Subject to this, the Committee shall deliver to the Participant, a certificate or certificates for the appropriate number of Shares after the Exercise Price, if applicable, is paid, the Committee obtains any Consents, stockholders agreement, and withholding tax payment arrangement it requires, and after all other requirements of this section are satisfied. Subject to Applicable Laws, the Committee in its discretion may deliver these certificates to a person or entity designated by the Participant, such as his or her stockbroker.

*Cambium Learning Stock Compensation Plan*

    *4.6.2   Representations and Warranties.*  As a condition to the exercise of an Award, the Committee may require the person exercising the Award to represent and warrant that the Shares are being purchased only for investment and without any present intention to sell or distribute such Shares if, in the opinion of counsel for the Company, such a representation is required by law.

    *4.6.3   Consents.*  If the Committee determines that any Consent is necessary or desirable as a condition of, or in connection with any Plan Action, the Plan Action shall not be taken until the Consent has been done or obtained to the full satisfaction of the Committee.

    *4.6.4   Fractional Shares.*  The Company may pay cash in lieu of issuing a fractional share.

    *4.6.5   Acquiring Stockholder Rights.*  A person shall not have any stockholder rights with respect to Stock subject to an Award until he or she is issued a stock certificate by the Company for that Stock.

    **4.6.6   *Requirement of Notification Under Code Section 421(b).*  If a Participant shall make any disposition of Shares issued pursuant to exercise of an ISO under the circumstances described in Code Section 421(b) (relating to certain disqualifying dispositions), such Participant shall notify the Company of such disposition with ten days thereof.**

    **4.7     Litigation Expenses.**  Except as provided in the applicable Award Agreement, the Company shall reimburse a Participant for reasonable legal fees and expenses that the Participant incurs in order to enforce or defend his or her rights under this Plan, but only if the Participant receives a judgement or settlement substantially in the Participant's favor. Reimbursements that are due under this section shall be paid promptly.

    **4.8     No Right to Continued Service.**  Nothing in the Plan or any Award Agreement shall confer on any Participant any right to continue in an employment, consulting or any other relationship with the Company. Furthermore, except to the extent explicitly provided otherwise in a written employment contract executed by the Company, nothing in the Plan or any Award Agreement shall restrict the Company's right to terminate any Participant's employment, consulting or any other relationship with the Company at any time, with or without Cause.

    **4.9     Severability.**  Subject to one exception, every provision of this Plan is intended to be severable, and any illegal or invalid term shall not affect the validity or legality of the remaining terms. The only exception is that this Plan shall be invalid and unenforceable if any provision of the preceding section is illegal, invalid, or unenforceable.

    **4.10    Successors.**  Every reference to a law, entity, person, agreement, provision, or anything else shall be deemed a reference to its successor, as determined by the Committee, to the extent it deems appropriate in its discretion.

    **4.11    Headings.**  Headings shall be ignored in interpreting the Plan.

## Appendix A
## Definitions

"**Affiliate**" means an entity (other than a Parent or a Subsidiary) which, together with the Company, is under common control of a third person or entity, as determined by the Committee. In addition, the Committee in its discretion may designate any other entity as an Affiliate.

"**Applicable Laws**" means the legal or Stock Exchange requirements governing the Plan and Plan Awards, including Code Section 422 as to ISOs and any securities or corporation law exemption or qualification requirement that the Committee determines to be helpful.

"**Award**" means an award made under the Plan.

"**Award Agreement**" means a written document setting forth the terms of an Award, as prescribed by the Committee.

"**Beneficial Owner**" has the meaning set forth in Rule 13d-3 under the Securities Act.

"**Board**" means the Board of Directors of the Company.

"**Bonus Stock**" means an Award of Shares made free of vesting or other restrictions.

"**Cash Award**" has the meaning set forth in Section 2.5 of the Plan.

"**Cause**" shall have the meaning explicitly set forth in the then-effective employment or consulting agreement between the Participant and the Company. If no such agreement exists, "Cause" means the Company's good faith belief that is has cause to terminate the Participant's Service based on the Participant's willful misconduct or any other conduct of the Participant that is or may be unlawful, dishonest or disreputable, to the possible detriment of the Company or the Participant's own reputation.

"**Change in Control**" means the occurrence of one of the following events:

(i)    *Acquisition of Controlling Interest.* Any Person becomes the Beneficial Owner, directly or indirectly, of securities of the Company representing 50% or more of the combined voting power of the Company's then outstanding securities in connection with a merger or otherwise. In applying the preceding sentence, (i) securities acquired directly from the Company or its Subsidiaries or Affiliates by or for the Person shall not be taken into account, and (ii) an agreement to vote securities shall be disregarded unless the Committee reasonably determines that its ultimate purpose is to cause what otherwise would be a Change in Control or to replace one or more Directors or members of senior

i

management (other than pursuant to a recommendation adopted by an at least two-thirds vote of the Company's board of directors);

(ii)    *Merger or Consolidation.* There is a merger or consolidation of the Company or any of its Subsidiaries with into any other entity, other than (a) a merger or consolidation which would result in the voting securities of the Company outstanding immediately prior to the merger or consolidation continuing to represent more than 50% of the voting power of the Company or the surviving entity immediately following the merger or consolidation, or (y) a merger of consolidation in connection with a recapitalization of the Company in which no Person acquires 50% or more of the combined voting power of the Company's outstanding securities; or

(iv)    *Sale of Assets.* The stockholders of the Company approve an agreement for the sale or disposition by the Company of all, or substantially all, of the Company's assets. If such a sale or disposition is canceled, it shall cease to be a Change in Control with as much retroactive effect as the Committee determines to be practicable.

(v)    *Liquidation or Dissolution.* The stockholders of the Company approve a plan or proposal for liquidation or dissolution of the Company. If such a liquidation or dissolution is canceled, it shall cease to be a Change in Control with as much retroactive effect as the Committee determines to be practicable.

"**Code**" means the Internal Revenue Code of 1986, as amended.

"**Committee**" means the committee appointed by the Board to act as Plan administrator pursuant to Section 1.3 of the Plan.

"**Company**" means the Cambium Learning Group, Inc. As determined by the Committee in its discretion, to the extent appropriate, the term Company may also refer in addition or instead to the Company's Parent or any Subsidiaries or Affiliates.

"**Consent**" with respect to any Plan Action means any (i) listings, registrations, or qualifications on any Securities Exchange or under any federal, state or local law, rule, or regulation, (ii) written agreements and representations by the Participant with respect to the disposition of Shares, or with respect to any other matter, that the Committee shall deem necessary or desirable to comply with the terms of any listing, registration, or qualification, or to obtain an exemption from the requirement that any listing, registration, or qualification be made, and (iii) any governmental or regulatory body consent, clearance, or approval.

"**Consultant**" means any person, including an advisor, who is compensated by the Company or any Parent, Subsidiary, or Affiliate for services, other than a Director or Employee.

"**Director**" means a member of the Board.

"**Effective Date**" means the date the Company adopted this Plan, as set forth in the Key Terms.

"**Employee**" means any person employed by the Company, a Parent, a Subsidiary or (except as to ISOs) an Affiliate, as determined by the Committee. An outside Director is not an Employee.

"**Exercise Price**" means the price per Share that must be paid to buy Stock subject to an Option.

"**Fair Market Value**" means fair market value, as determined by the Committee as it in good faith deems appropriate but, when possible, based on stock prices reported in the *Wall Street Journal* for the applicable date or, if was not business day, the last preceding business day.

"**Incentive Stock Option**" means an Option that is intended to qualify for special federal income tax treatment pursuant to Code Sections 421 and 422, and which is so designated in the applicable Award Agreement. Any Option that is not specifically designated as an ISO is an NQO.

"**ISO**" means Incentive Stock Option.

"**Key Terms**" means the summary of the Plan's key terms at the beginning of the Plan.

"**Listed Security**" means any security that is listed or approved for listing on a national securities exchange or designated or approved for designation as a national market system security on an interdealer quotation system by the National Association of Securities Dealers, Inc.

"**Named Executive**" means any individual who, on the last day of the Company's fiscal year, is the chief executive officer of the Company (or is acting in such capacity) or among the four most highly compensated officers of the Company (other than the chief executive officer), as determined under the Securities Act's executive compensation disclosure rules.

"**Non-Qualified Option**" means an Option not intended to qualify as an ISO.

"**NQO**" means a Non-Qualified Option.

"**Option**" means a stock option Award.

"**Parent**" means a current or future "parent corporation," as defined in Code Section 424(e), with respect to the Company.

iii

"**Participant**" means the grantee of an Award under this Plan. In appropriate contexts, as determined by the Committee, the term shall also refer to a person or entity to which an Award has properly been transferred in accordance with the Plan and its transferability limits.

"**Performance Award**" means an Award granted, subject to Applicable Law, with value, payment or other terms contingent upon performance of the Company or specified Subsidiaries or any other factors designated by the Committee.

"**Person**" means any natural person, corporation, general partnership, limited liability company, limited partnership or other business organization, trust, union or association, and shall include a "group," as defined in Rule 13d-5 of the Securities Act. However, a "person" shall not include: (i) the Company or its Parent, Subsidiaries, or Affiliates; (ii) a trustee or other fiduciary holding securities under this Plan or any employee benefit plan of the Company, its Parent, Subsidiaries, and Affiliates (iii) an underwriter temporarily holding securities pursuant to an offering; or (iv) a corporation owned, directly or indirectly, by the stockholders of the Company in substantially the same proportions as their ownership of shares of the Company.

"**Plan**" means this plan.

"**Plan Action**" means the grant of an Award, the issuance or purchase of Shares or other rights, or any other action under the Plan.

"**Restricted Stock**" means an Award of Shares subject to vesting or other restrictions.

"**Rule 16b-3**" means Securities Act Rule 16b-3.

"**Securities Act**" means the Securities Exchange Act of 1934.

"**Service**" means uninterrupted service in a capacity eligible for Awards under this Plan (e.g., as a Director, Employee, or Consultant). Service shall not be considered interrupted by any of the following events unless Applicable Law, the applicable Award Agreement or the Committee provides or determines otherwise: (i) changes in status between Director, Employee, or Consultant or any other position with the Company, any Parent, a Subsidiary, or an Affiliate, or their respective successors (such as to advisory or emeritus status); (ii) transfers between Company locations or between the Company, its Parents, Subsidiaries, Affiliates, or their respective successors; or (iii) approved or legally-mandated leaves of absence (except, as to an ISO, a leave that has continued for 90 days if reemployment is not guaranteed by contract or statute following expiration of the leave).

"**Share**" means a share of Stock.

"**Stock**" means the common stock of the Company.

"**Stock Exchange**" means any stock exchange or consolidated stock price reporting system on which prices for the Stock are quoted at any given time.

"**Subsidiary**" means a current or future "subsidiary corporation," as defined in Code Section 424(f), with respect to the Company.

"**Ten Percent Holder**" means a person who owns stock representing more than 10% of the voting power of all classes of stock of the Company or any Parent or Subsidiary (as determined for purposes of Code Section 422(b)(6))

v

# EXHIBIT E

CONFIDENTIAL

February 8, 2006

Mr. Reginald Powe
16 East 98th Street, Apt. 10A
New York, NY 10029

*Re: Separation Agreement and General Release*

Dear Reggie:

This letter proposes the following Separation Agreement and General Release ("Agreement") between you and Cambium Learning (New York) , Inc. ("Company") regarding the terms of your separation from the Company.

### I. Background

A. You were employed by the Company as Divisional Sales Executive. You and the Company have agreed to terminate your employment relationship on an amicable basis.

B. On March 1, 2006, your employment with the Company will be terminated.

### II. Terms of Agreement

In order to effect the termination of your employment and to provide you with certain benefits that you would not otherwise be entitled to, you and the Company agree as follows:

1. This Agreement shall not be in any way construed as an admission by the Company that it has acted wrongfully with respect to you or any other person, or that you have any rights whatsoever against the Company.

2. Even if you do not sign this Agreement, the Company will pay you the compensation that you have earned through the date of your termination including any accrued vacation benefits per the Cambium Learning policy and any amounts earned but unpaid on your 2005 Sales Commission Plan. Similarly, even if you do not sign this Agreement, you will be offered benefits to which you are entitled under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), and you retain all benefits under the Company's 401(k) Plan.

3. In exchange for the promises contained in this Agreement and release of claims as set forth below, and provided that you sign this agreement and return it to me by March 1, 2006 and do not revoke this Agreement as set forth in Paragraph 12(d):

The Company will pay a severance allowance in the amount of $102,083.00 and will be paid to you 7 days after this Agreement becomes effective. Also, after this Agreement becomes effective, the Company agrees to provide you with medical coverage, the same benefit as would be offered if employed by the Company, for a period of two years after the termination date. For seven months after the termination date, you agree to pay 30% of the Company's cost to provide your monthly medical coverage. Failure to pay this amount to the Company by the 15th of each month of coverage will result in the Company ceasing the benefit you were entitled under this agreement and you will be offered benefits as a terminated employee.

4. In consideration of the promises contained in this Agreement, you agree:

a. On behalf of yourself and anyone claiming through you, irrevocably and unconditionally to release, acquit and forever discharge the Company and/or its parent corporation, subsidiaries, divisions, predecessors, successors and assigns, as well as each past and present officers, directors, employees, shareholders, trustees,

joint venturers, partners, and anyone claiming through them (hereinafter "Releasees" collectively), in each individual and/or corporate capacities, from any and all claims, liabilities, promises, actions, damages and the like, known or unknown, which you ever had against any of the Releasees arising out of or relating to your employment with the Company and/or the termination of your employment with the Company. Said claims include, but are not limited to: (1) employment discrimination (including claims of sex discrimination and/or sexual harassment) and retaliation under Title VII (42 U.S.C.A. 2000e etc.) and under 42 U.S.C.A. section 1981 and section 1983, age discrimination under the Age Discrimination in Employment Act (29 U.S.C.A. sections 621-634) as amended by any relevant state statutes or municipal ordinances; (2) disputed wages; (3) wrongful discharge and/or breach of any alleged employment contract; and (4) claims based on any tort, such as invasion of privacy, defamation, fraud and infliction of emotional distress.

b. Subject to Company not being in breach of this agreement, you shall not bring any legal action against any of the Releasees for any claim waived and released under this Agreement and that you represent and warrant that no such claim has been filed to date. You further agree that should you bring any type of administrative or legal action arising out of claims waived under this Agreement. The successful litigant shall be entitled to reimbursement of all reasonable legal fees.

5. You agree to refer any and all reference checks to the Cambium Learning (New York) HR Department and you know that any such references will be limited to confirmation of your dates of employment and last position held. The obligation under this Paragraph is separable and any failure by the Company to perform the obligation in this Paragraph will only give rise to an action to enforce this Paragraph.

6. You agree that you will not, directly or indirectly, disclose the fact of and terms of this Agreement, including the severance benefits, to anyone other than your attorney, except to the extent such disclosure may be required for accounting or tax reporting purposes or as otherwise required by law.

7. This agreement shall be binding on the parties and upon their heirs, administrators, representatives, executors, successors and assigns and shall inure to their benefit and to that of their heirs, administrators, representatives, executors, successors and assigns.

8. On or before March 1, 2006 you will return to David Caron all of the Company's property in your possession including, but not limited to, customer lists, mailing lists, account information, samples, prototypes, price lists and pricing information, any phone cards, cellular phone, automobile and all of the tangible and intangible property belonging to the Company and relating to your employment with the Company. You further represent and warrant that you have not retained any copies, electronic or otherwise, of such property.

9. On or before March 1, 2006, you will return to David Caron all of the Company's property in your possession including, but not limited to any credit cards and all of the tangible and intangible property belonging to the Company and relating to your employment with the Company. You further represent and warrant that you have not retained any copies, electronic or otherwise, of such property.

10. You will cooperate fully with the Company in its defense of or other participation in any administrative, judicial or other proceeding arising from any charge, complaint or other action which has been or may be filed.

11. You agree that you will not make any comments relating to the Company or its employees which are critical, derogatory or which may tend to injure the business of the Company.

12. In the event that you breach any of your obligations under Paragraphs 8 through 11, any outstanding obligations of the Company hereunder shall immediately terminate, and any payments previously made to you pursuant to Paragraph 3 shall be returned to the Company.

13. You also acknowledge that you have been informed pursuant to the federal Older Workers Benefit Protection Act of 1990 that:

a. You have the right to consult with an attorney before signing this Agreement;

b. You do not waive rights or claims under the federal Age Discrimination in Employment Act that may arise after the date this waiver is executed.

c. You have twenty-one (21) days from the date of this letter to consider this Agreement;

d. You have seven (7) days after signing this Agreement to revoke the Agreement, and the Agreement will not be effective until that revocation period has expired.

14. The provisions of this Agreement are severable. If any provision is held to be invalid or unenforceable, it shall not affect the validity or enforceability of any other provision.

15. This Agreement sets forth the entire agreement between you and the Company and supersedes any and all prior oral or written agreements or understandings between you and the Company concerning the subject matter of this Agreement. This Agreement may not be altered, amended or modified, except by a further written document signed by you and the Company.

16. You represent that you fully understand your right to review all aspects of this Agreement with an attorney of your choice, that you have had the opportunity to consult with an attorney of your choice, that you have carefully read and fully understand all the provisions of this Agreement and that you are freely, knowingly and voluntarily entering into this Separation Agreement and General Release.

If you are willing to enter into this Agreement, please signify your acceptance in the space indicated below, and return to me by March 1, 2006. As I noted earlier, this Agreement will not become effective, and none of the severance benefits in Paragraph 3 will be paid, until seven (7) days after the date you sign this Agreement.

PLEASE READ CAREFULLY. YOU ARE GIVING UP ANY LEGAL CLAIMS THAT YOU HAVE AGAINST THE COMPANY BY SIGNING THIS AGREEMENT.

Very truly yours,

Nader Darehshori
Chairman and Chief Executive Officer

Accepted and agreed to on this 28th day of February, 2006.

Employee signature

Witness:_____     Date: 2/28/06