```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------
REGINALD POWE, et al.,

                 Plaintiffs,              08 Civ. 1963 (JGK)

       - against -                        MEMORANDUM OPINION AND
                                          ORDER
CAMBIUM LEARNING COMPANY,

                 Defendant.
------------------------------------
```

JOHN G. KOELTL, District Judge:

The plaintiffs, Reginald Powe and Colleen Jones, have asserted breach of contract and fraud claims arising out of the grant of stock options in two substantially identical employment agreements entered into by the plaintiffs and the defendant, Cambium Learning Company ("Cambium"), when the defendant acquired the plaintiffs' company. The plaintiffs allege that the defendant prevented them from exercising the stock options and made various misrepresentations concerning the nature of the stock options. The defendant moves to dismiss the action in its entirety pursuant to Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure.

I

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the allegations in the Complaint are accepted as true. Grandon v. Merrill Lynch & Co., 147 F.3d 184,

1

188 (2d Cir. 1998).  In deciding a motion to dismiss, all reasonable inferences must be drawn in the plaintiff's favor. Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995); Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  The Court should not dismiss the Complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  Twombly v. Bell Atl. Corp., 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

In deciding the defendant's motion to dismiss, the Court may consider documents attached to the Amended Complaint or incorporated in it by reference, matters of which judicial notice may be taken, or documents that the plaintiffs relied upon in bringing suit and either are in his possession or of which he had knowledge.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2000); see also Jofen v. Epoch

Biosciences, Inc., No. 01 Civ. 4129, 2002 WL 1461351, at *1 (S.D.N.Y. July 8, 2002).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 129 S. Ct. at 1949; see also Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007); Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002).

The plaintiffs' allegations of fraud are governed by the heightened pleading standard set forth in Federal Rule of Civil Procedure Rule 9(b).  Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  In order to meet the heightened pleading standard provided by Rule 9(b), a Complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007).

II

The original Complaint in this action was filed on January 8, 2008.  The defendant moved to dismiss that Complaint and the Court held oral argument on July 15, 2008.  At oral argument the Court granted the plaintiffs leave to replead, and the plaintiffs filed an Amended Complaint on November 13, 2008.  The Amended Complaint alleges the following facts.

The plaintiffs, New York residents, were formerly principals and controlling shareholders of the Metropolitan Teaching and Learning Company ("Metropolitan").  (Am. Compl. ¶¶ 2-3, 9.)  On October 28, 2003, the defendant, a Massachusetts-based corporation, acquired the assets of Metropolitan.  (Am. Compl. ¶¶ 26, 51.)  In connection with that transaction, the plaintiffs entered into separate but substantially identical employment agreements with the defendant dated October 28, 2003 (the "Jones Agreement" and the "Powe Agreement," respectively; the "Employment Agreements," collectively), in which the plaintiffs accepted employment with the defendant as Senior Vice Presidents.  (Am. Compl. ¶¶ 13, 22, 39, 50.)  The Employment Agreements provided for various forms of compensation to the plaintiffs.  (Jones Agreement ¶ 2; Powe Agreement ¶ 2.)  One of those forms of compensation was a grant of stock options.  (Am. Compl. ¶¶ 14, 39.)  The Employment Agreements are repeatedly

incorporated by reference into the Amended Complaint and may therefore by considered by the Court on this motion to dismiss.

The Jones Agreement provided for a grant of stock options to Ms. Jones as follows: "Initial grant equal to 0.5% of the common equivalent shares outstanding in Cambium Learning Company immediately after the first acquisition of the assets of Metropolitan Teaching and Learning Company but before any further capital contributions.  The exercise price of the options shall be their fair market value at the time of issuance, and they shall be subject to vesting provisions consistent with those under the stock option plans adopted by the Company."  (Am. Compl. ¶ 15.)  The Powe Agreement provided for an almost identical grant of stock options to Mr. Powe, differing only in granting options equal to 1% of the common equivalent shares outstanding in Cambium rather than 0.5%.  (Am. Compl. ¶ 40.)

Approximately six months after the plaintiffs entered into the Employment Agreements, the defendant introduced a stock compensation plan known as the 2004 Stock Compensation Plan (the "2004 Plan").  The 2004 Plan is incorporated by reference into the Amended Complaint and may therefore be considered by the Court on this motion to dismiss.  (See Am. Compl. ¶ 29 n.1.) The 2004 Plan provided that each award of options "shall be evidenced by a written Award Agreement, which shall contain such

5

provisions as the Committee [in charge of administering the 2004 Plan] in its discretion deems necessary or desirable.  By accepting an Award pursuant to [the 2004] Plan, a Participant agrees that the Award shall be subject to all of the terms of [the 2004] Plan and the applicable Award Agreement."  (Burns Decl. Ex. D ¶ 2.1.)  The plaintiffs never received an Award Agreement evidencing the grant of options provided for in the Employment Agreements.  (Am. Compl. ¶ 29 n.1.)

The 2004 Plan further provided that "[e]xcept as otherwise provided herein or in the applicable Award Agreement, an Option shall automatically expire if not exercised within 30 days after the termination by the Company (without Cause) of a Participant's Service for any reason . . . . [I]n the event of a Participant's voluntary resignation from and termination of Service with the Company, an Option shall automatically and immediately expire if not exercised prior to such Participant's final day of Service."  (Burns Decl. Ex. D ¶ 2.11.2.)

The plaintiffs appear to have terminated their employment with the defendant on February 28, 2006.  (Am. Compl. ¶¶ 29(f), 54(f).)  The Amended Complaint fails to allege the nature of the termination, but at oral argument on the original Complaint defense counsel represented to the Court that the plaintiffs resigned voluntarily.  (Burns Decl. Ex. E at 6.)  At the time of their resignation the plaintiffs had not exercised the stock

options granted in the Employment Agreements.  (Am. Compl. ¶¶ 29, 54.)

The plaintiffs allege that during their employment with the defendant they repeatedly requested information regarding the exercise of their stock options, but the defendant failed to provide the requested information.  (Am. Compl. ¶¶ 28, 29(f), 53, 54(f).)  The plaintiffs allege that the defendant's failure to provide the requested information prevented the plaintiffs from exercising their stock options.  (Am. Compl. ¶¶ 29(f), 54(f).)  The plaintiffs also allege that the defendant directly refused to allow the plaintiffs to exercise their stock options; such direct refusals appear to have come exclusively after the plaintiffs' employment was voluntarily terminated, and not during their tenure with the defendant. (Am. Compl. ¶¶ 16-17, 41-42.)

The plaintiffs allege that Nader Darehshori, the Chairman, Chief Executive Officer and President of Cambium, and George A. Logue, the Executive Vice President of Cambium, represented to the plaintiffs at the time they entered into the Employment Agreements that their stock options were intended as deferred compensation for the sale of Metropolitan and that the options were "fully vested" upon the execution of the Employment Agreements.  (Am. Compl. ¶¶ 24-25, 49-50.)  The plaintiffs allege that they entered into the Employment Agreements pursuant

7

to and in reliance on those representations, and the defendant made such representations in order to induce the plaintiffs to enter into the Employment Agreements.  (Am. Compl. ¶¶ 25, 27, 34, 50, 52, 59.)  The plaintiffs also assert that they received assurances from Mr. Darehshori that their stock options would be exercisable notwithstanding the termination of their employment, but they do not allege that they relied on those assurances in entering into the Employment Agreements or that those assurances provide a basis for a fraud claim.  (Am. Compl. ¶¶ 17, 42.)

On several occasions after their resignation the plaintiffs requested information by email from the defendant regarding the exercise of their stock options.  (Am. Compl. ¶¶ 29, 54.)  In response to those emails Mr. Darehshori acknowledged the emails and indicated, in substance, that he would look into the matter of the exercise of the stock options.  (Am. Compl. ¶¶ 29, 54.)

The defendant currently refuses to allow the plaintiffs to exercise their stock options.

### III

This is a diversity action in which both parties agree that New York law applies.  See, e.g., Rackson v. Sosin, 14 Fed. Appx. 23, 24 (2d Cir. 2001) (foregoing conflict of laws analysis and applying New York law in diversity action where all parties agreed New York law applied); Leadsinger, Inc. v. Cole, No. 05

8

Civ. 5606, 2006 WL 2320544, at *9 n.4 (S.D.N.Y. Aug. 10, 2006) ("The parties, by citing New York law only, implicitly agree that New York law governs the claims . . . ."); see also RLI Ins. Co. v. Conseco, Inc., 543 F.3d 384, 390 (7th Cir. 2008) ("When neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits.").

    The plaintiffs argue that the defendant breached the Employment Agreements by failing to provide requested information about exercising the stock options granted therein during the plaintiffs' employment with the defendant, thereby effectively preventing the plaintiffs from exercising the stock options during their employment, and by refusing to allow the plaintiffs to exercise their stock options after the termination of their employment.  The defendant advances two grounds for dismissing the plaintiffs' contract claims.  First, the defendant argues that the claims should be dismissed because the plaintiffs' stock options expired upon the termination of their employment, pursuant to the 2004 Plan, and therefore the plaintiffs were not entitled to exercise their stock options after the conclusion of their term of employment with the defendant.  Second, the defendant argues that the claims should be dismissed because the plaintiffs have failed to allege the specific contract terms that the defendant breached.

The defendant's first argument is insufficient to dismiss the plaintiffs' contract claims.  The argument fails to account for the plaintiffs' claim that the defendant prevented them from exercising the stock options during their employment with the defendant by refusing requested information about exercising the options and failing to provide Award Agreements to evidence the grant of stock options, which would be necessary under the 2004 Plan which the defendant argues should apply.  Exercising the stock options during the plaintiffs' employment with the defendant would not have been precluded by the 2004 Plan, even assuming the 2004 Plan applies to the stock options at issue.  The defendant may not, in refusing to allow the plaintiffs to exercise their stock options, rely on the plaintiffs' failure to do so during their employment pursuant to the timing restrictions of the 2004 Plan if the defendant caused that failure by refusing to provide requested information or necessary Award Agreements.  See, e.g., Wagner v. Derecktor, 118 N.E.2d 570, 572 (N.Y. 1954) ("Over a century ago we reasserted the then-well settled rule that a party cannot insist upon a condition precedent, when its non-performance has been caused by himself.") (internal quotation marks omitted); see also Graff v. Billet, 477 N.E.2d 212, 215 (N.Y. 1984) (Kaye, J., dissenting) ("[A] party cannot take advantage of the failure of a condition

precedent caused by his own conduct . . . .") (citing 5 Williston, Contracts § 677 (3d ed.)).

It does not matter that the allegations in the Amended Complaint that the defendant prevented the plaintiffs from exercising the stock options during their employment fall within the sections of the Amended Complaint nominally devoted to the plaintiffs' fraud claims. (See Am. Compl. ¶¶ 28, 29(f), 53, 54(f).)  The Amended Complaint was plainly intended to integrate all of the allegations therein and assert those allegations to support the plaintiffs' breach of contract and fraud claims. (See Am. Compl. ¶¶ 21, 37, 46) (repeating and realleging all foregoing allegations).)  It would be "excessively formalistic" to ignore any allegations in the Amended Complaint based on the heading under which they fall. Henry v. Wyeth Pharm., Inc., No. 05 Civ. 8106, 2007 WL 4526525, at *6 (S.D.N.Y. Dec. 19, 2007) ("To dismiss some of plaintiff's claims because of the heading under which they were listed in the Complaint would surely violate the command of the Federal Rule of Civil Procedure that pleadings must be construed so as to do justice.") (internal quotation marks and alterations omitted).

The defendant's first argument also fails because the Court cannot assume on this motion to dismiss that the 2004 Plan, on which the defendant relies in refusing to permit the plaintiffs to exercise the stock options after their resignation, governs

11

the stock options granted in the Employment Agreements.  There is no indication by either party that any stock compensation plan existed at the time the stock options were granted.  The Employment Agreements provided that the stock options would be granted immediately and an exercise price would be set immediately.  The Employment Agreements also provided that the stock options would be subject to vesting conditions consistent with those under the stock option plans adopted by the Company, without identifying any such conditions or plans.  Given the immediate grant of options at an immediately assigned exercise price, the apparent lack of any vesting conditions for the first six months the plaintiffs held the options, and the failure of the Employment Agreements to specify any stock option plan to govern the stock options, including the 2004 Plan, the Employment Agreements in themselves were plainly ambiguous with respect to whether and how the 2004 Plan should be applied to the stock options granted to the plaintiffs.  See, e.g., Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co., 411 F.3d 384, 390 (2d Cir. 2005) ("Whether a contract is ambiguous is a threshold question of law to be determined by the court."); UBS Secs. LLC v. Finish Line, Inc., No. 07 Civ. 10382, 2008 WL 536616, at *5 (S.D.N.Y. Feb. 22, 2008) ("A contract is ambiguous when it is reasonably susceptible to more than one reading or one as to which reasonable minds could differ.").

12

The meaning of an ambiguous contract is a question of fact for the fact-finder.  See, e.g., Scholastic, Inc. v. Harris, 259 F.3d 73, 82 (2d Cir. 2001).  The defendant argues that there is no plausible dispute that the 2004 Plan governs the stock options granted to the plaintiffs, and that it prevents the plaintiffs from exercising their stock options after the voluntary termination of their employment.  The defendant argues in this connection that the factual record does not reflect an alternative stock option plan or alternative vesting conditions that could govern the stock options in question.  The defendant's argument is really an argument that there is no genuine issue of material fact with respect to whether and how the 2004 Plan applies to the stock options granted in the Employment Agreements.  The validity of that argument should be tested against the factual record that is developed prior to a motion for summary judgment.  It cannot dispose of the plaintiffs' breach of contract claims on this motion to dismiss.

The defendant's second argument to dismiss the plaintiffs' breach of contract claims also fails.  The defendant's second argument is that the plaintiffs have failed to allege the specific contract terms that the defendant breached.  That amounts to an argument that even if the defendant prevented the plaintiffs from exercising the stock options granted in the Employment Agreements, that would not constitute a breach of the

Employment Agreements.  The defendant reasons that because the plaintiffs have only alleged a breach of the Employment Agreements, they have failed to state a claim for breach of contract.

The defendant's second argument is without merit.  The plaintiffs have identified in the Amended Complaint a specific section of the Employment Agreements providing for an immediate grant of stock options equivalent to a specific amount of equity in Cambium and exercisable at a specific exercise price to be determined immediately.  The section of the Employment Agreements identified by the plaintiffs plainly contemplated the exercise of the stock options granted therein – indeed, the Employment Agreements explicitly provided for the exercise price of the stock options to be set immediately.  This is not a case where the plaintiffs have identified a contractual provision that is unspecific or unrelated to the alleged breach.  Cf. Leadsinger, 2006 WL 2320544, at *10 (dismissing breach of contract claim alleging failure to repay advance payments where cited contract provision was "silent on the parties' obligations concerning advances" and did not "mention[] or appl[y] to repayment of refundable advances"); Wolff v. Rare Medium, Inc., 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001) (dismissing breach of contract claim where complaint alleged entire contract was violated without identifying specific provision or language, and

14

plaintiff's brief failed to identify contract language creating obligation that was allegedly breached); Levy v. Bessemer Trust Co., N.A., No. 07 Civ. 1785, 1997 WL 431079, at *5 (S.D.N.Y. July 30, 1997) (dismissing breach of contract claim where complaint failed to allege existence of contract or that alleged representations that were not honored were part of contract); cf. also Tierney v. Omnicom Group, Inc., No. 06 Civ. 14302, 2007 WL 2012412, at *5 (dismissing breach of contract claim based on provision of stock options for lack of definiteness where provision failed to identify strike price, "a critical element of any stock option").  Moreover, while the Employment Agreements provided that the plaintiffs' stock options would be subject to vesting conditions consistent with those under the stock option plans adopted by the Company, they did not in any way suggest that it would not offend the Employment Agreements, which contemplated the exercise of the stock options, to prohibit the exercise of the stock options.  Nothing about subjecting the stock options to vesting conditions outside the Employment Agreements insulated the defendant from liability for breaching the Employment Agreements by preventing the exercise of the stock options, the exercise of which was explicitly contemplated therein.

Because the Employment Agreements contemplated the exercise of the stock options granted therein, prohibiting the exercise

15

of those stock options would constitute a breach of the Employment Agreements. It was therefore unnecessary for the plaintiffs to search beyond the Employment Agreements in order to allege breach of contract claims against the defendant.

For these reasons, the defendant's arguments do not warrant the dismissal of the plaintiffs' breach of contract claims.

IV

The plaintiffs argue that the defendant committed fraud through the alleged statements of Mr. Darehshori and Mr. Logue that the stock options granted in the Employment Agreements were intended as deferred compensation for the sale of Metropolitan, and that the stock options were fully vested when granted. The plaintiffs contend that these statements were fraudulent misrepresentations because the defendant never intended to allow the plaintiffs to exercise their stock options. The plaintiffs also assert that they relied on these alleged misrepresentations in entering into the Employment Agreements. The defendant argues that the fraud claims based on these alleged misrepresentations should be dismissed for lack of particularity and duplication of the breach of contract claims, among other reasons.

As explained above, under Federal Rule of Civil Procedure 9(b) a plaintiff alleging fraud is required to "(1) specify the

16

statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." ATSI Commc'ns, 493 F.3d at 99.  In this case, the plaintiffs have failed to meet that heightened pleading standard because they have not alleged where and when the alleged fraudulent statements by Mr. Darehshori and Mr. Logue were made.  Moreover, they have failed to explain why the alleged statements were fraudulent.  With respect to the alleged statement that the stock options were intended as deferred compensation for the sale of Metropolitan, it is unclear how the defendant's alleged intention never to allow the plaintiffs to exercise the stock options would belie the notion that the stock options were intended as compensation for the sale of Metropolitan, as opposed to compensation for the plaintiffs' employment at Cambium.  Similarly, the defendant's alleged intention never to allow the plaintiff to exercise the stock options would not render the alleged statement that the stock options were fully vested upon the execution of the Employment Agreements fraudulent.  The fraud claims assert that the defendant never intended to permit the exercise of the stock options, not that the defendants never intended to allow the options to become vested.  (See Am. Compl. ¶¶ 33, 58.)

17

In any event, the plaintiffs' fraud claims based on those two statements are plainly duplicative of their breach of contract claims and fail for that separate reason.  The gist of the plaintiffs' fraud claims is that the defendant never intended to permit the exercise of the stock options that it granted in the Employment Agreements, which explicitly contemplated the exercise of such options by providing for an exercise price.  (See Am. Compl. ¶¶ 33, 58.)  That is effectively the same as the gist of the plaintiffs' breach of contract claims.  See, e.g., Telecom Int'l Am., Ltd. v. AT&T Corp., 280 F.3d 175, 196 (2d Cir. 2001) ("[W]here a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract.") (internal quotation marks omitted).  See also id. ("In other words, simply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder, is insufficient to state an independent tort claim.") (internal quotation marks omitted).  Therefore, the plaintiffs have not alleged a separate fraud claim based on the alleged statements discussed above.

The plaintiffs also allege that certain statements were made by Mr. Darehshori in response to inquiries made by the plaintiffs through email after the voluntary termination of their employment with respect to exercising their stock options. (See Am. Compl. ¶¶ 29, 54.)  Although these allegations specify the allegedly fraudulent statements, identify the speaker of the statements, and indicate when and where the statements were made, they do not constitute a fraud claim.  The plaintiffs could not possibly have relied on the alleged statements in entering into the Employment Agreements because the statements occurred after the Employment Agreements had been executed and indeed after the plaintiffs were no longer employed with the defendant.  See, e.g., Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 186 (2d Cir. 2004) (explaining that reasonable reliance on alleged misrepresentation is element of fraud claim).  Therefore, the alleged statements by Mr. Darehshori in response to the plaintiffs' email inquires do not provide a basis for a fraud claim.

For these reasons, the plaintiffs' fraud claims should be dismissed.

## CONCLUSION

For all of the foregoing reasons, the defendant's motion to dismiss is **granted in part and denied in part**. The plaintiffs' fraud claims are dismissed. The plaintiffs' breach of contract claims remain. The Clerk is directed to close Docket No. 23.

**SO ORDERED.**

Dated:   New York, New York
         July 8, 2009

_____
John G. Koeltl
United States District Judge